IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| PAUL D. HEIMANN, individually,<br><br>Plaintiff,<br><br>vs.<br><br>ERICKSON & SEDERSTROM, P.C., L.L.O., and JOHN DOE&S 1-10,<br><br>Defendants. | **4:26CV3068**<br><br>**ORDER ON PLAINTIFF'S MOTION TO REVIVE MOTION FOR PRELIMINARY INJUNCTION, DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT, AND PLAINTIFF'S MOTION TO EXCLUDE OR CONVERT** |

Plaintiff Paul D. Heimann, a former partner in the defendant law firm of Erickson & Sederstrom, P.C., L.L.O. (E&S), alleges that E&S and unnamed defendants improperly accessed his email account at E&S after his departure from the firm. In an Amended Complaint, Heimann asserts federal claims against E&S and the John Doe Defendants under the Federal Wiretap Act, 18 U.S.C. § 2511 *et seq*.; the Stored Communications Act (SCA), 18 U.S.C. § 2701 *et seq*.; the Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030 *et seq*.; and the Declaratory Judgment Act, 28 U.S.C. § 2201. He also asserts state-law claims for fraudulent misrepresentation and spoliation of evidence against E&S and tortious interference with business relations against all Defendants.

This case is before the Court on Heimann's Motion to Revive Motion for Preliminary Injunction (Motion to Revive) in light of his Amended Complaint and additional evidence developed since the filing of his original Complaint. Filing 31.[1] It is also before the Court on E&S's Motion to Dismiss Plaintiff's First Amended Complaint (Motion to Dismiss) pursuant to Federal

[1] Heimann filed an Ex Parte Motion for Temporary Restraining Order and Preliminary Injunction, Filing 2, at the same time that he filed his original Complaint. The Court has denied the Motion for Temporary Restraining Order but has not ruled on the motion for Preliminary Injunction.

Rule of Civil Procedure 12(b)(6) for failure of any of Heimann's claims to state a claim upon which relief can be granted. Filing 42. Heimann resists dismissal of all his claims except Count VIII ("Spoliation"), which he concedes cannot proceed where it is currently pleaded as an independent tort. Filing 54 at 5. Finally, this case is before the Court on Heimann's Motion Under Federal Rule of Civil Procedure 12(d) to Exclude Extra-Pleading Material from Defendants' Motion to Dismiss, or in the Alternative, to Convert the Motion to One for Summary Judgment and Authorize Discovery Under Federal Rule of Civil Procedure 56(d) (Motion to Exclude or Convert). Filing 62.

For the reasons set out below, the Court concludes that Heimann's Motion to Exclude or Convert is denied. The Court also concludes that E&S's Motion to Dismiss is granted as to the federal claims in Counts I through V and IX, but the Court declines to exercise supplemental jurisdiction over the remaining state-law claims in Counts VI, VII, and VIII, and dismisses them without prejudice. Heimann's Motion to Revive is denied as moot.

## I. INTRODUCTION

### A. Factual Background

On a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court considers the allegations drawn from the Amended Complaint as true to the extent that they are nonconclusory. *See* *Bauer v. AGA Serv. Co.*, 25 F.4th 587, 589 (8th Cir. 2022) (quoting *Pietoso, Inc. v. Republic Servs., Inc.*, 4 F.4th 620, 622 (8th Cir. 2021)). The Court also considers "materials necessarily embraced by the pleadings, including exhibits attached to the complaint and matters of public record." *LeMay v. Mays*, 18 F.4th 283, 289 (8th Cir. 2021) (internal quotation marks and citations omitted).

Heimann practiced law at E&S from approximately 1999 until December 30, 2024. Filing 30 at 2 (¶ 4). Heimann acknowledges that "[a]t all times relevant hereto, E&S owned and

administered the eslaw.com email domain and the Barracuda email security gateway at d91069a.ess.barracudanetworks.com through which communications addressed to pheim@eslaw.com Heiman's work email at the firm, were processed. Filing 30 at 2 (¶ 5).[2] Heimann "voluntarily departed E&S on December 30, 2024," and immediately started practicing with another law firm. Filing 30 at 2 (¶ 9). Heimann took active clients with him in accordance with applicable Rules of Professional Conduct. Filing 30 at 2 (¶ 9).

Heimann made multiple requests to E&S during January 2025 to implement either an auto-reply on pheim@eslaw.com directing senders to his new work email address or a forwarding rule routing inbound emails to his new address, but E&S declined both requests without explanation. Filing 30 at 3 (10). On February 4, 2025, the managing Partner at E&S, Andrew Collins, sent Heimann an email responding to a list of open post-departure items in which he included the statement,

> Your e-mail account has now been shut down completely, as I understand it, so there should be no issue going forward, as no e-mail to your addresses will come in anymore. We have satisfied our ethical obligations with regard to any prior communications received.

Filing 30 at 3 (¶ 11). A copy of the email was not attached to the Amended Complaint or the original Complaint. Heimann alleges that he relied on Collins's representation by proceeding on the basis that the account was deactivated. Filing 30 at 3 (¶ 14).

However, Heimann alleges that Collins's representation was false because "[t]he documentary and forensic record establishes that pheim@eslaw.com was not deactivated after Plaintiff's departure but was instead configured as a redirect, routing inbound communications to an undisclosed shadow mailbox operated by or at the direction of E&S." Filing 30 at 4 (¶ 15); *see*

[2] The Amended Complaint alleges that "[t]he John Doe defendants are persons who, upon information and belief, accessed, read, copied, disclosed, used, or otherwise exploited electronic communications addressed to Plaintiff at pheim@eslaw.com after December 30, 2024." Filing 30 at 2 (¶ 6).

*also* Filing 30 at 4–6 (¶¶ 16–23) (listing emails and "forensic test events" between February 2025 and February 2026 allegedly demonstrating the forwarding of emails to the "shadow mailbox"). Heimann also alleges that between March 14, 2026, and March 18, 2026, E&S modified its Barracuda configuration, which produced an iCloud test "bounce" demonstrating that the shadow mailbox had been concealing a real but different address from his former work email address, Filing 30 at 6 (¶¶ 24–25). Nevertheless, Jeffrey L. Clark, E&S's IT Manager, filed an affidavit on April 7, 2026, stating *inter alia*, "E&S did not reconfigure the routing configuration or impose any forwarding, redirect, or alias feature for the email account pheim@eslaw.com." Filing 30 at 7 (¶ 30) (quoting Filing 21-2 at 2 (¶ 7)).

Heimann makes extensive allegations about evidence that he believes contradicts E&S's representations and reveals the reconfiguration of E&S's email system. Filing 30 at 7–10 (¶¶ 31–48). The remaining factual allegations in the Amended Complaint concern E&S's failure to preserve and spoliation of evidence, Filing 30 at 10–11 (¶¶ 49–54); allegations about a prior ransomware attack on E&S and other data security failures, Filing 30 at 11–12 (¶¶ 55–57); and E&S's failure to protect client property in file transfers after Heimann's departure, Filing 30 at 12 (¶¶ 58–60).

**B. Procedural Background**

Heimann filed his original Complaint in this matter on February 27, 2026, as well as an Ex Parte Motion for Temporary Restraining Order and Preliminary Injunction. Filing 1; Filing 2. On March 2, 2026, the Court entered a Memorandum and Order denying Heimann's Motion for Ex Parte Temporary Restraining Order and stated that the Court would set a briefing schedule on the Motion for Preliminary Injunction after the named Defendants had been served and appeared in the case. Filing 5 at 10. The Court eventually set a hearing on the Motion for Preliminary Injunction. Filing 10. Defendant E&S filed a Motion to Dismiss two days later. Filing 11. On

March 30, 2026, the Court canceled the hearing and referred to a magistrate judge Heimann's Motion for Expedited Discovery, Filing 14, which he had filed in the interim, Filing 16. In a text order filed April 8, 2026, the magistrate judge found good cause for very limited discovery. Filing 28.

On April 15, 2026, Heimann filed the Amended Complaint now before the Court against E&S and John Does 1–10. Filing 30. The first three Counts of Heimann's Amended Complaint allege violations of provisions of the Wiretap Act. In Count I of the Amended Complaint, Heimann alleges "Violation of the Federal Wiretap Act: Unlawful Interception *(18 U.S.C. § 2511(1)(a) – Against All Defendants)*." In Count II, Heimann alleges "Violation of the Federal Wiretap Act: Unlawful Disclosure *(18 U.S.C. § 2511(1)(c) – Against All Defendants)*." Filing 30 at 14. In Count III, Heimann alleges "Violation of the Federal Wiretap Act: Unlawful Use *(18 U.S.C. § 2511(1)(d) - Against All Defendants)*." Filing 30 at 15.

There are three more Counts in the Amended Complaint asserting federal claims. In Count IV, Heimann alleges "Violation of the Stored Communications Act *(18 U.S.C. § 2701 - Against All Defendants)*." Filing 30 at 15. In Count V, Heimann alleges "Violation of the Computer Fraud and Abuse Act *(18 U.S.C. § 1030(a)(2) - Against All Defendants)*." Filing 30 at 16. In Count IX, Heimann seeks "Declaratory Judgment *(28 U.S.C. § 2201 - Against Defendant E&S)*." Filing 30 at 19.

In the remaining three Counts of the Amended Complaint, Heimann asserts state-law claims. In Count VI, he asserts "Fraudulent Misrepresentation *(Nebraska Common Law - Against Defendant E&S)*." Filing 30 at 17. In Count VII, he asserts "Tortious Interference with Business Relations *(Nebraska Common Law - Against All Defendants)*." Filing 30 at 17. In Count VIII, he asserts "Spoliation of Evidence *(Against Defendant E&S)*." Filing 30 at 18.

Heimann seeks extensive relief on his Amended Complaint. That relief includes actual, statutory, and punitive damages, attorneys' fees, pre- and post-judgment interest, and injunctive and declaratory relief. Filing 30 at 20.[3]

On April 15, 2026, the same day Heimann filed his Amended Complaint, Heimann filed a Motion to Revive Motion for Preliminary Injunction (Motion to Revive), which is one of the Motions now before the Court. Filing 31. On April 16, 2026, the Court denied Defendants' then-pending Motion to Dismiss the original Complaint without prejudice to reassertion as to the Amended Complaint, and the Court also ordered briefing on Heiman's Motion to Revive. Filing

---

[3] Specifically, Heimann prays for the following:

A. On Counts I, II, and III (Wiretap Act): the greater of Plaintiff's actual damages or statutory damages of $10,000 per day of violation, plus punitive damages and attorneys' fees, pursuant to 18 U.S.C. § 2520;

B. On Count IV (Stored Communications Act): the greater of Plaintiff's actual damages or $1,000 statutory damages per violation, plus punitive damages and attorneys' fees, pursuant to 18 U.S.C. § 2707;

C. On Count V (Computer Fraud and Abuse Act): economic damages as defined by 18 U.S.C. § 1030(g);

D. On Counts VI and VII (state law claims): actual damages, consequential damages, and emotional distress damages in amounts to be determined at trial;

E. On Count VIII (Spoliation): an adverse inference instruction, monetary sanctions, and other appropriate relief;

F. On Count IX (Declaratory Judgment): a declaration that E&S has no right to access, read, retain, use, or disclose electronic communications sent to pheim@eslaw.com after December 30, 2024, and that any such communications are protected by attorney-client privilege and by 18 U.S.C. §§ 2511 and 2515;

G. Preliminary and permanent injunctive relief requiring Defendants to: (i) cease intercepting or redirecting communications addressed to pheim@eslaw.com; (ii) implement an auto-reply directing senders to Plaintiff's current address; (iii) produce a complete log of all communications received at or redirected from pheim@eslaw.com since December 30, 2024; and (iv) preserve all Barracuda and Microsoft 365 records relating to the configuration, operation, and contents of the shadow mailbox redirect;

H. An order compelling production of the complete sender log and identification of all communications intercepted through the shadow mailbox redirect;

I. Pre-judgment and post-judgment interest as permitted by law;

J. Attorneys' fees and litigation costs to the extent authorized by statute; and

K. Such other and further relief as the Court deems just and proper.

Filing 30 at 20.

35 at 2–3. Thereafter the parties engaged in limited expedited discovery and had further conferences with the magistrate judge about the scope of such discovery. Filing 38 (text minutes); Filing 41 (granting limited expedited discovery).

On April 29, 2026, E&S filed the Motion to Dismiss Plaintiff's First Amended Complaint (Motion to Dismiss) now before the Court. Filing 42. The parties then briefed both Heimann's Motion to Revive and E&S's Motion to Dismiss. On June 4, 2026, Heimann filed his Motion Under Federal Rule of Civil Procedure 12(d) to Exclude Extra-Pleading Material from Defendants' Motion to Dismiss, or in the Alternative to Convert the Motion to One for Summary Judgment and Authorize Discovery Under Federal Rule of Civil Procedure 56(d) (Motion to Exclude or Convert), which is also now before the Court. Filing 62. The parties have also now fully briefed the Motion to Exclude or Convert.

## II. PLAINTIFF'S MOTION TO EXCLUDE OR CONVERT

The Court will consider first the last Motion filed, Heimann's Motion to Exclude or Convert. That Motion potentially impacts what the Court considers on the Motion to Dismiss, including whether the Court must delay consideration of the Motion to Dismiss to accommodate appropriate discovery, and it also potentially impacts the disposition of Heimann's Motion to Revive. The Court begins its consideration of Heimann's Motion to Exclude or Convert with a summary of the parties' arguments.

### A. The Parties' Arguments

In his Motion to Exclude or Convert, Heimann asks the Court to exclude from consideration on E&S's Motion to Dismiss several categories of material that he identifies as "extra-pleading material" and asks the Court to decide the Motion to Dismiss on the "well-pleaded allegations" in his Amended Complaint and materials properly embraced by that pleading. Filing 62 at 3; Filing 64 at 11–21. In the alternative, Heimann requests that E&S's Motion to Dismiss be

converted pursuant to Federal Rule of Civil Procedure 12(d) into a motion for summary judgment under Federal Rule of Civil Procedure 56 and that he then be authorized to take discovery pending disposition of the converted motion pursuant to Rule 56(d). Filing 62 at 4; Filing 64 at 22–24. Heimann's supporting brief concludes with additional arguments on the merits of E&S's Motion to Dismiss that are patently improper because they are in addition to the briefing on that Motion permitted by NECivR 7.1. Filing 64 at 24–26.

In Response, E&S—like the Court—points out that Heimann uses the Motion to Exclude or Convert as a vehicle for additional, improper factual argument in opposition to the Motion to Dismiss. Filing 66 at 1. As to the merits of the Motion to Exclude or Convert, E&S argues that the Motion is based on materials that E&S either did not rely on at all or cited only to respond to Heimann's own use of the same materials. Filing 66 at 1. E&S argues further that material submitted in relation to the Motion for Preliminary Injunction should not be considered on E&S's Motion to Dismiss. Filing 66 at 2–3. E&S then argues that two of the items that Heimann seeks to exclude, RFC 3464 and the "Client A" email, are embraced by the Amended Complaint, so that they may properly be considered. Filing 66 at 3–4. E&S argues that Heimann then reverses course and asks the Court to consider as judicial admissions materials that he sought to exclude as "outside of the pleadings." Filing 66 at 4–7.

In reply, Heimann concedes that the Court can read affidavits that he quoted in part in the Amended Complaint as matters embraced by the pleadings, but he argues that those affidavits do not establish the truth of E&S's denials of any facts. Filing 67 at 2, 4–8. He asserts that materials generated after the pleading closed cannot be considered. Filing 67 at 2. He contends that E&S's "responsive use" of outside materials is not permissible. Filing 67 at 8.

### B. Rule 12(d) "Conversion" Standards

Federal Rule of Civil Procedure 12(d) provides,

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12(d). The Eighth Circuit defines "matters outside the pleadings" as including "any written or oral evidence in support of or in opposition to the pleading that provides some substantiation for and does not merely reiterate what is said in the pleadings." *Hamm v. Rhone–Poulenc Rorer Pharm., Inc.*, 187 F.3d 941, 948 (8th Cir. 1999) (citation omitted).

"Rule 12(b)(6) motions are not automatically converted into motions for summary judgment simply because one party submits additional matters in support of or [in] opposition to the motion." *Sorace v. United States*, 788 F.3d 758, 767 (8th Cir. 2015) (cleaned up; citations omitted). Rule 12(d) expressly requires conversion only if matters outside the pleadings are "presented to and not excluded" by the court, that is, if they are not excluded from the court's consideration of the motion. Fed. R. Civ. P. 12(d); *see also Davis v. Ricketts*, No. 8:11CV221, 2011 WL 9369010, at *1 (D. Neb. Nov. 14, 2011) (explaining that materials outside the complaint "must be excluded from consideration in connection with the pending motion"), *aff'd*, 765 F.3d 823 (8th Cir. 2014). Nothing in the language of Rule 12(d) requires that such materials be "excluded" in the sense of being stricken from the record. Conversion also is not "automatic" because the Eighth Circuit "reviews a district court's decision to convert a Rule 12(b)(6) motion to dismiss into a motion for summary judgment [pursuant to Rule 12(d)] for abuse of discretion." *Solomon v. Petray*, 795 F.3d 777, 786 (8th Cir. 2015) (citation omitted).

The bar on consideration of "matters outside the pleadings" does not bar consideration of everything that is outside the four corners of the pleading itself. Rather, the Eighth Circuit "permits consideration of materials necessarily embraced by the pleadings, including exhibits attached to the complaint and matters of public record." *LeMay v. Mays*, 18 F.4th 283, 289 (8th Cir. 2021)

(cleaned up). A court may also consider "'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned[,] without converting' a motion to dismiss under Rule 12(b)(6) into one for summary judgment." *Roberson v. Dakota Boys & Girls Ranch*, 42 F.4th 924, 928 (8th Cir. 2022) (quoting *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017)). "Such evidence may not, however, be viewed for the truth of the matters asserted." *LeMay*, 18 F.4th at 289. In other words, the Court can "consider the [evidence's] existence" but not "its narrative as truth." *Id.*

**C. Neither Exclusion Nor Conversion Is Required**

There are certainly matters outside of the pleadings that the parties have referred to in their briefing of E&S's Motion to Dismiss. *See Hamm*, 187 F.3d at 948 (defining "matters outside the pleadings"). Some of those matters are not "materials necessarily embraced by the pleadings" nor are they otherwise appropriate for consideration on a Rule 12(b)(6) motion. *See Roberson*, 42 F.4th at 928 (defining "matters incorporated by reference or integral to a claim" and other matters the court may consider without converting a Rule 12(b)(6) motion); *LeMay*, 18 F.4th at 289 (defining "materials necessarily embraced by the pleadings"). The Court also acknowledges that matters beyond the four corners of the pleadings that may properly be considered on a Rule 12(b)(6) motion still cannot be viewed for the truth of the matters asserted, but only for the existence of the evidence. *LeMay*, 18 F.4th at 289.

Nevertheless, whether or not to convert a motion to dismiss to a motion for summary judgment pursuant to Rule 12(d) is a matter in the Court's discretion. *Solomon*, 795 F.3d at 786. The Court's discretion to deny conversion is informed in this case by the Court's conclusion that the Motion to Dismiss can and will be resolved on the proper record and on proper grounds, so that the Motion to Dismiss does not require discovery to resolve relevant issues. *Cf. Steinbuch v.*

*Cutler*, 518 F.3d 580, 591 (8th Cir. 2008) (finding no abuse of discretion in refusing to allow discovery where a pleading lacked sufficient factual allegations to state a claim). Consequently, in the Court's consideration of E&S's Motion to Dismiss, the Court will consider the well-pleaded allegations in the Complaint and only those additional matters that the Court may properly consider on a Rule 12(b)(6) motion because they are embraced by or incorporated into the pleadings and then only to the extent permitted. *See Roberson*, 42 F.4th at 928; *LeMay*, 18 F.4th at 289.

In short, Heimann's Motion to Exclude or Convert is denied.

That said, the Court also notes that Heimann cites to evidence that cannot be considered on a Rule 12(b)(6) motion to dismiss. For example, Heimann asserts that evidence filed by E&S "contemporaneously" with its Motion to Dismiss is relevant to the plausibility of the allegations in his Amended Complaint. Filing 54 at 17–22. Such an argument is problematic because it seeks consideration of materials that are not among those that can be considered on a Rule 12(b)(6) motion. Another example is Heimann's reliance on E&S's May 14, 2026, response to the Court's discovery order as confirming allegations in his Amended Complaint, even though such matters cannot be considered for their truth. Filing 54 at 27–29. The Court cannot and will not consider such evidence—or the arguments based upon such evidence—on E&S's Motion to Dismiss. *See Roberson*, 42 F.4th at 928 (defining "matters incorporated by reference or integral to a claim" and other matters the court may consider without converting a Rule 12(b)(6) motion); *LeMay*, 18 F.4th at 289 (defining "materials necessarily embraced by the pleadings").

## III. THE MOTION TO DISMISS

The Court turns next to E&S's Motion to Dismiss, which seeks dismissal of all Heimann's claims in his Amended Complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. The Court begins its analysis of this Motion with a summary of the applicable standards. The Court will apply these standards first to Heimann's federal claims. Then, if

appropriate, the Court will consider whether Heimann's state law claims meet Rule 12(b)(6) pleading standards.

**A. Rule 12(b)(6) Standards**

To state a claim, "a pleading"[4] need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Nevertheless, Federal Rule of Civil Procedure 12(b)(6) provides for a motion filed pre-answer (or pre-responsive pleading) to dismiss claims "in any pleading" asserting "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The Eighth Circuit Court of Appeals recently explained the Rule 12(b)(6) standards as follows:

> "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "In analyzing a motion to dismiss, a court must accept the allegations contained in the complaint as true and make all reasonable inferences in favor of the nonmoving party." *Martin v. Iowa*, 752 F.3d 725, 727 (8th Cir. 2014).

*Geivett v. AMC Mgmt., LLC*, 158 F.4th 900, 903 (8th Cir. 2025).

Although courts must accept a complaint's allegations as true, courts "do not accept 'threadbare recitals of a cause of action's elements, supported by mere conclusory statements,'" or legal conclusions unsupported by factual allegations. *Dalen v. Harpstead*, 123 F.4th 900, 903–04 (8th Cir. 2024) (quoting *Iqbal*, 556 U.S. at 663). A court also need not accept a pleader's "legal conclusions drawn from the facts." *Knowles v. TD Ameritrade Holding Corp.*, 2 F.4th 751, 755 (8th Cir. 2021). Again, a court is not required to wait and see if more specific information becomes available through the discovery process to decide if a pleading can state a claim. *Steinbuch*, 518

[4] Federal Rule of Civil Procedure 7(a) identifies allowable pleadings.

F.3d at 591 (finding no abuse of discretion in refusing to allow discovery where a pleading lacked sufficient factual allegations to state a claim).

One of the issues in this case is the sufficiency of pleading "on information and belief." "[A]llegations pled on information and belief are not categorically insufficient to state a claim for relief. . . ." *Ahern Rentals, Inc. v. EquipmentShare.com, Inc.*, 59 F.4th 948, 954 (8th Cir. 2023). Nevertheless,

> allegations pled on information and belief are insufficient to state a claim for relief unless "the proof supporting the allegation is within the sole possession and control of the defendant or ... the belief is based on sufficient factual material that makes the inference of culpability plausible."

*Briscoe v. St. Louis Cnty.*, 172 F.4th 996, 1010 (8th Cir. 2026) (quoting *Ahern Rentals, Inc.*, 59 F.4th at 954), *reh'g denied*, No. 25-1668, 2026 WL 1850642 (8th Cir. June 12, 2026). Without sufficient allegations showing that proof is solely within the opposing party's possession, pleading on "information and belief" is insufficient. *Id.* Similarly, without plausible factual allegations to support them, pleadings "on information and belief" can be rejected as merely conclusory. *Id.*

**B. Heimann's "Structural Error" Argument**

*1. The Parties' Arguments*

Heiman's primary argument in his attempt to survive E&S's Motion to Dismiss is that E&S's arguments for dismissal for failure to state claims are premised on a "structural error." Filing 54 at 1. That "structural error," Heimann contends, is that E&S erroneously treats his claims as involving a property dispute between an employer and a former employee, but Heimann contends that the basis for his claims is a law firm's secret redirection, monitoring, or reading of communications addressed to a former partner. Filing 54 at 1. Thus, Heimann contends that "[t]he duties at issue arise not from the law of personal property and corporate ownership, but from the Rules of Professional Conduct and the federal statutes that operate against the backdrop of those

rules." Filing 54 at 1. Indeed, a substantial share of Heimann's opposition to the Motion to Dismiss is devoted to allegations of violations of ethical duties, which he argues make inapplicable judicial decisions analyzing the same claims that he asserts but involving only a different employer-employee relationship or other kinds of relationships between the alleged wrongdoer and the alleged victim. Filing 54 at 4, 7–17.

E&S responds that Heimann's "structural error" argument "moves the goal posts" in an attempt to rescue his defective pleading and satisfy the elements of the claims he has asserted. Filing 58. Rather than a "structural error," E&S asserts that its status as Heimann's former employer and the owner and administrator of its email domain is "the only legally sound framework to resolve this motion because the governing federal statutory authorization principles turn on who owns and operates the system." Filing 58 at 1 (emphasis in the original).

*2. Heimann's "Structural Error" Argument Is Mistaken*

Heimann has not brought claims of violations of ethical or professional rules of conduct nor is this a professional disciplinary proceeding. Heimann has brought his claims under several federal statutes and state common law tort doctrines. Those statutes and doctrines define certain wrongdoing as the basis for liability. The wrongdoing they define is not controlled or guided by ethical rules or rules of professional conduct but by the terms of the statutes and the tort doctrines. It is true that a pleader is not required to plead facts establishing a prima facie case to survive a Rule 12(b)(6) motion because the prima facie case is an evidentiary standard and not a pleading requirement. *Wilson v. Ark. Dep't of Hum. Servs.*, 850 F.3d 368, 372 (8th Cir. 2017) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002)). Nevertheless, that does not mean that a pleader can ignore the elements of the wrongdoing defined by the statute or tort doctrine at issue. Rather, "such elements are part of the background against which a plausibility determination

should be made." *Blomker v. Jewell*, 831 F.3d 1051, 1056 (8th Cir. 2016) (cleaned up with citation omitted).

To put it another way, the elements of the claims defined by the federal statutes and the tort doctrines are relevant at the pleading stage as a "prism to shed light upon the plausibility of the claim[s]." *Blomker*, 831 F.3d at 1056 (citation omitted). Heimann's attempt to replace those elements with ethical obligations or to graft such ethical obligations onto the elements of the claims would create claims involving different misconduct from the misconduct prohibited by the statutes and tort doctrines that are the purported bases for liability. The only question here is whether Heimann has plausibly pleaded that E&S is liable for violating the statutes and tort doctrines on which his claims are based by engaging in the conduct the statutes and doctrines prohibit; the question is not whether the conduct alleged is prohibited by some other rules. *See Geivett*, 158 F.4th at 903 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (quoting *Iqbal*, 556 U.S. at 678)).

In short, whether or not Heimann's allegations of ethical violations are plausible, they do not support any plausible inference that E&S is liable for violations of the federal statutes and the tort doctrines on which Heimann bases his claims.[5] The Court declines Heimann's invitation to create new claims based on ethical standards or professional rules of conduct as the measure of the plausibility of claims that he has ostensibly brought under other statutes and tort doctrines.

---

[5] Although ethical rules and rules of professional conduct are not at issue in this case, the Court acknowledges that the allegations of the Amended Complaint raise ethical concerns that could be addressed in proper proceedings before the proper body.

### C. Heimann's Claims of Wiretap Act Violations

As explained just above, what matters to determination of whether Heimann's three Wiretap Act claims state claims upon which relief can be granted is the wrongdoing prohibited by the statutes at issue. Therefore, the Court begins its analysis of Heimann's three Wiretap Act claims with a survey of the relevant statutory provisions.

#### *1. Statutory Provisions*

The first three federal claims allege violations of distinct but related provisions of the Wiretap Act. The provisions in question are the following:

> **§ 2511. Interception and disclosure of wire, oral, or electronic communications prohibited**
>
> **(1)** Except as otherwise specifically provided in this chapter any person who--
>
> > **(a)** intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication;
> >
> > * * *
> >
> > **(c)** intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection; [or]
> >
> > **(d)** intentionally uses, or endeavors to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection . . .
>
> shall be punished as provided in subsection (4) or shall be subject to suit as provided in subsection (5).

18 U.S.C. § 2511(1)(a), (c), (d); *see also* 18 U.S.C. § 2520 (providing for recovery of civil damages by a person whose electronic communication is intercepted, disclosed, or intentionally used, subject to the exception in § 2511(2)(a)(ii)). Thus, these provisions involve *inter alia* "electronic communications." *Id.*

The Fourth Circuit has explained that under the Wiretap Act,

> Congress broadly defined "electronic communication" to include, with a few inapposite exceptions, "*any* transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectric or photooptical system that affects interstate or foreign commerce[.]" 18 U.S.C. § 2510(12) (emphasis added). The plain language of this definition encompasses email.

*Hately v. Watts*, 917 F.3d 770, 784–85 (4th Cir. 2019) (citing "[n]umerous courts" that had reached the same conclusion). Email is the specific "electronic communication" at issue in this case. Also, all three claims involve email that has been "intercepted." *See* 18 U.S.C. § 2511(1)(a), (c), (d). In this case, "'intercept' means the aural or other acquisition of the contents of any [email] through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4). Also,

> "electronic, mechanical, or other device" means any device or apparatus which can be used to intercept a wire, oral, or electronic communication other than--
>
>> (a) any telephone or telegraph instrument, equipment or facility, or any component thereof, (i) furnished to the subscriber or user by a provider of wire or electronic communication service in the ordinary course of its business and being used by the subscriber or user in the ordinary course of its business or furnished by such subscriber or user for connection to the facilities of such service and used in the ordinary course of its business; or (ii) being used by a provider of wire or electronic communication service in the ordinary course of its business, or by an investigative or law enforcement officer in the ordinary course of his duties.

18 U.S.C. § 2510(5). Thus, the pertinent "device" is defined in large part in terms of exceptions. *Id.* (something is a "device . . . other than" those listed).

Section 2511(2) states exceptions to liability for conduct prohibited by § 2511(1), some of which may be at issue in this case. Specifically, § 2511(2)(a)(i) states,

> (2)(a)(i) It shall not be unlawful under this chapter for an operator of a switchboard, or an officer, employee, or agent of a provider of wire or electronic communication service, whose facilities are used in the transmission of a wire or electronic communication, to intercept, disclose, or use that communication in the normal course of his employment while engaged in any activity which is a necessary incident to the rendition of his service or to the protection of the rights or property of the provider of that service, except that a provider of wire communication service

> to the public shall not utilize service observing or random monitoring except for mechanical or service quality control checks.

18 U.S.C. § 2511(2)(a)(i). "Under the plain language of Section 2510(17)(B), . . . 'any service which provides to users thereof the ability to send or receive' email messages constitutes an electronic communication service." *Hately*, 917 F.3d at 787. Further, "email providers fall squarely within the statutory definition of electronic communication service [providers]." *Id.* at 790. Section 2511(2)(d) states another exception, as follows:

> (d) It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.

18 U.S.C. § 2511(2)(d).

2. *Count I: Unlawful Interception in Violation of § 2511(1)(a)*

a. The Claim

In Count I of the Amended Complaint, Heimann alleges "Violation of the Federal Wiretap Act: Unlawful Interception *(18 U.S.C. § 2511(1)(a) – Against All Defendants)*." Filing 30 at 13. The gravamen of this claim is the following:

> 63. By configuring a server-side redirect rule within their Barracuda email gateway to route inbound communications addressed to pheim@eslaw.com to an undisclosed shadow mailbox, Defendants intentionally intercepted electronic communications at the time of their transmission. As the Seventh Circuit held in *United States v. Szymuszkiewicz*, 622 F.3d 701 (7th Cir. 2010), and *Epstein v. Epstein*, 843 F.3d 1147 (7th Cir. 2016), such server-side forwarding rules constitute contemporaneous interception within the meaning of the Wiretap Act, even when configured by a party with authorized system access.

Filing 30 at 13 (¶ 63). Heimann alleges further that "[n]one of the Wiretap Act's exceptions applies." Filing 30 at 13 (¶ 65).

The elements of a Wiretap Act "interception" claim are a "prism that may shed light upon the plausibility of the claim," *Blomker*, 831 F.3d at 1056—and thus they also provide context to

the parties' arguments on the sufficiency of the pleading of this claim. The Third Circuit has explained,

> A plaintiff pleads a prima facie case under the [Wiretap] Act by showing that the defendant "(1) intentionally (2) intercepted, endeavored to intercept or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication, (5) using a device."

*In re Google Inc. Cookie Placement Consumer Priv. Litig*., 806 F.3d 125, 135 (3d Cir. 2015) (quoting *In re Pharmatrak, Inc. Privacy Litig*., 329 F.3d 9, 18 (1st Cir. 2003), in turn citing 18 U.S.C. § 2511(1)(a)).

b. The Parties' Arguments

E&S argues that its authority to access its own emails on its own servers bars all three of Heimann's Wiretap Act claims. Filing 43 at 10. As to Count I specifically, E&S argues that Heimann cannot point to a single email that E&S intercepted in transit and that his pleading of interception on "information and belief" is conclusory speculation. Filing 43 at 10. E&S also argues that Heimann's admissions that he was an employee of E&S and that E&S controlled his email address is fatal to his interception claim because the senders directed the emails to an email account owned by E&S. Filing 43 at 11. E&S also invokes the § 2511(2)(d) exception as a party to the communications, where Heimann was an employee of E&S and he used E&S's email address. Filing 43 at 11. E&S argues that emails directed to the domain eslaw.com, such as those to Heimann's former work email address, are directed to E&S as a matter of law. Filing 43 at 11–12 (citing *Healix Infusion Therapy, Inc. v. Helix Health, LLC*, 747 F. Supp. 2d 730, 744 (S.D. Tex. 2010), in turn citing 18 U.S.C. § 2510(5)). In the alternative, E&S invokes the § 2511(a)(1) exception as the provider of the electronic communication service because E&S's facilities were used in the transmission of wire or electronic communications. Filing 43 at 12.

Heimann argues that he has plausibly alleged contemporaneous interception of his emails. Filing 54 at 29–31. Heimann also argues that the service-provider exception in § 2511(2)(a)(i) does not apply. Filing 54 at 34. He argues that the conduct that he has alleged was not within the scope of that exception where it was not incident to the rendition of email services or the protection of E&S's rights or property because attorney-client privileged communications are not E&S's property. Filing 54 at 34. He next argues that whether E&S's conduct fell within the service-provider exception is a factual question that cannot be resolved at the pleading stage. Filing 54 at 34. He argues further that the "party-to-the-communication" exception in § 2511(2)(d) does not apply because it focuses on the actual parties to the communication not on whose physical infrastructure the communication transits. Filing 54 at 35. Heimann also asserts that E&S has "affirmatively disclaimed party status" by swearing that E&S is not receiving and viewing communications. Filing 54 at 36. Finally, he contends that this exception does not apply where the interception is undertaken for a "tortious act," which includes the violations of state tort law and ethical violations that he has alleged. Filing 54 at 36–38.

In reply, E&S reiterates that Heimann's concessions that E&S owned and operated the email domain, the email security gateway, and servers are dispositive of his Wiretap Act claims. Filing 58 at 4. They also argue that when a client forms an attorney-client relationship with an attorney, the presumption is that the attorney-client framework is imputed to the entire firm, so that E&S was necessarily a party to the communications in question on this ground. Filing 58 at 5. E&S also argues that, as the owner of the eslaw.com domain, it cannot "intercept" communications sent to Heimann's former work email account within the meaning of the Wiretap Act. Filing 58 at 10 (citing *Hall v. EarthLink Network, Inc.*, 396 F.3d 500 (2d Cir. 2005)). E&S also argues that it necessarily "acquired" communications the moment they were received at the Barracuda email gateway defense (EGD) service, before any alleged "server-side redirect rule" to

a "shadow mailbox" could have applied. Filing 58 at 11. E&S argues that once an email is sent to the eslaw.com domain, E&S becomes a party to the communication and cannot "intercept" it. Filing 58 at 12. E&S disputes Heimann's contention that E&S disclaimed "party" status because a representation that E&S shut down the email account does not address whether third parties who sent emails to Heimann's former work address had directed the emails to E&S. Filing 58 at 13. Finally, E&S argues that simply pleading that a tort may have been committed "does not create an 'interception' where none existed in the first place." Filing 58 at 13.

c. Count I Fails to Plead an "Interception" of Heimann's Emails

There is no question that emails sent to Heimann's former work email address are "electronic communications" under § 2510(12), *see Hately*, 917 F.3d at 784-85, so the question is whether the emails were improperly "intercepted" under § 2511(1)(a). Heimann's arguments in support of this claim focus first on the timing of the alleged interception. Heimann is correct that case law recognizes that "in order for an 'intercept' to occur for purposes of the Wiretap Act, the electronic communication at issue must be acquired contemporaneously with the transmission of that communication." *Luis v. Zang*, 833 F.3d 619, 629 (6th Cir. 2016) (joining all other circuits that had considered the question). However, the dispositive issue here is not one of timing but one of how any emails sent to Heimann's former work email were acquired and by whom.

Critically, an "interception" means acquisition of an email "through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4); *see also In re Google Inc.*, 806 F.3d at 135 (stating an element of an interception claim as interception of the contents of the electronic communication "using a device"). The "device" required to prove an "interception" cannot be any equipment "furnished to the subscriber or user by a provider of wire or electronic communication services in the ordinary course of its business and being used by the subscriber or user in the ordinary course of its business." 18 U.S.C. § 2510(5). Here, Heimann concedes in his Amended

Complaint that E&S provided the email service to Heimann and owned and administered the eslaw.com email domain, the drives, and servers required for the firm's email system—*i.e.*, he concedes that E&S was the electronic communications (email) service provider. *See Hately*, 917 F.3d at 790 (stating "email providers fall squarely within the statutory definition of electronic communication service [providers]"). These circumstances fall squarely within the "device" exception because the "device" required to prove an "interception" cannot be any equipment "furnished to the subscriber or user [Heimann] by a provider of wire or electronic communication services [E&S] in the ordinary course of its business and being used by the subscriber or user [Heimann] in the ordinary course of its business." 18 U.S.C. § 2510(5).

As E&S argues, the decision of the district court in *Healix Infusion Therapy, Inc. v. Helix Health, LLC*, 747 F. Supp. 2d 730 (S.D. Tex. 2010), is instructive on this point. In that case, the court explained,

> [T]he drive or server on which an e-mail is received does not constitute a "device" for purposes of the Wiretap Act. *Ideal Aerosmith, Inc. v. Acutronic USA, Inc.*, No. 07–1029, 2007 WL 4394447, at *4 (E.D. Pa. Dec. 13, 2007). To state a claim under the Wiretap Act, Defendants were required to allege that a communication was intentionally intercepted through use of a device. *Id.*; 18 U.S.C. § 2510(5). In *Ideal*, Acutronic acquired servers previously owned by Carco, and Ideal hired Carco's employees. These employees then sent emails using the Carco domain name. These emails were received by the original Carco servers and redirected by Acutronic to its own servers. Acutronic then read the emails. The *Ideal* court held that these circumstances did not state a claim for wiretapping because "Acutronic employed no device to acquire these e-mails, but was merely, as [the new] owner of Carco's system, a direct party to the communication." *Id*. at *5. That Acutronic was not the intended recipient of the emails did not make its conduct a Wiretap Act violation. Additionally, the Ideal court noted that only senders of communications, not recipients have standing to bring Wiretap Act claims. The facts in this case are similar. HIT acquired the domain name "helixhealth.org" from Defendants and had the domain name transferred to GoDaddy.com servers. Emails sent using the helixhealth.org domain name were thus received into the HIT-owned accounts on GoDaddy.com servers, although directed nominally to Defendants. The Court concludes that HIT was thus a direct party recipient of these emails and did not commit a Wiretap Act violation.

*Healix Infusion Therapy, Inc.*, 747 F. Supp. 2d at 744.

The same is true here although E&S—unlike Acutronic and HIT—owned the domain and the email system from the start instead of acquiring ownership later. Emails sent to the eslaw.com domain owned by E&S were not intercepted by a "device" as § 2510(5) defines such a "device" but were directed to E&S's servers and as such were acquired by E&S merely as the owner of the eslaw.com email system. *Id.* (citing *Acutronic USA*, 2007 WL 4394447, at *5). Thus, E&S was "a direct party to the communication." *Id.* (quoting *Acutronic USA*, 2007 WL 4394447, at *5). Further, even assuming that only Heimann was the intended recipient of the emails and not the law firm that employed him, that circumstance did not negate E&S's party status and did not make E&S's conduct a violation of the Wiretap Act. *Id.*

Because no "device" was used by E&S to purportedly "intercept" emails to Heimann's former work email within the meaning of § 2510(5) and § 2511(1)(a), Count I fails to state a claim of interception of emails. *See In re Google Inc.*, 806 F.3d at 135 (stating the elements of an "interception" claim under § 2511(1)(a)). Heimann has failed to "plead factual content that allows the court to draw the reasonable inference that [E&S] is liable for the misconduct alleged," so Count I is subject to dismissal on this ground alone. *Geivett*, 158 F.4th at 903 (citation omitted).

For the same reason that E&S used no "device" to "intercept" emails directed to Heimann's former work address, E&S was "a direct party to the communications." *Healix Infusion Therapy*, 747 F. Supp. 2d at 744. The "party to the communication" exception to a violation of the Wiretap Act states that it is not unlawful for a person who is "a party to the communication" to "intercept" an email. 18 U.S.C. § 2511(2)(d). Heimann first argues that the "party-to-the-communication" exception in § 2511(2)(d) does not apply because it focuses on the actual parties to the communication not on whose physical infrastructure the communication transits. Filing 54 at 35. However, he cites no authority for that proposition. Filing 54 at 35. Contrary to Heimann's position, the party exception in § 2511(2)(d) applies because E&S, as the email service provider

and the owner of the email domain, servers, and system, is a party to the emails as a matter of law. *Healix Infusion Therapy*, 747 F. Supp. 2d at 744 (citing *Acutronic USA*, 2007 WL 4394447, at *5).

Nor is there merit to Heimann's next argument that this case falls within an exception to the exception in § 2511(2)(d). The exception to the exception states "unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." *Id.* Heimann argues that "tortious" here is broader than "criminal," so that "it captures civil wrongs of every variety, including conduct that breaches professional duties giving rise to civil liability." Filing 54 at 17. Heimann contends,

> The First Amended Complaint pleads that Defendant's interception was undertaken in furtherance of fraudulent misrepresentation (Count VI) and tortious interference with business relations (Count VII). It further establishes that the interception, on the pleaded facts, breached the ABA-recognized professional duties owed by a law firm to a departing lawyer and to that lawyer's former clients.

Filing 54 at 17. Heimann cites no authority for the proposition that a violation of professional duties of a law firm is "tortious" within the meaning of § 2511(2)(d). Also, the Ninth, Third, and Second Circuits all require that under § 2511(2)(d) the communication must have been intercepted for the purpose of a tortious or criminal act that is "independent" of the intentional act of interception. *See Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022); *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 276 (3d Cir. 2016); *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 145 (3d Cir. 2015); *Caro v. Weintraub*, 618 F.3d 94, 96 (2d Cir. 2010). Here, the alleged misrepresentation is about whether E&S was intercepting emails instead of shutting down Heimann's former work email address. Filing 30 at 17 (¶ 85). The alleged tortious interference is the interception of emails to Heimann's former work email address. Filing 30 at 18 (¶ 91). Thus, these torts are dependent on rather than independent of the intentional act of interception, and the exception to the exception in § 2511(2)(d) does not apply.

Also unavailing is Heimann's reliance in this Count of his Amended Complaint on *United States v. Szymuszkiewicz*, 622 F.3d 701 (7th Cir. 2010), and *Epstein v. Epstein*, 843 F.3d 1147 (7th Cir. 2016). Filing 30 at 13 (¶ 63). E&S had responded to Heimann's citations to these case by stating, "In neither case was the party accused of violating the Federal Wiretap Act the owner and administrator of the email system, like E&S is here." Filing 43 at 13. In reply, Heimann argued,

> [*Szymuszkiewicz* and *Epstein*] hold that a server-side rule that copies communications to a different recipient "catch[es] the message in flight" and constitutes interception under the Wiretap Act. *Szymuszkiewicz*, 622 F.3d at 704. Defendant's effort to distinguish those cases on the ground that the wrongdoer "lacked authority over the system" misreads them. The critical fact in both was *covert* configuration, the redirect was hidden from the account holder.

Filing 54 at 4–5 (emphasis in the original).

These cases do not save Heimann's "interception" claim in Count I from dismissal. Rather, as E&S argues, neither case even addressed the circumstances of ownership of the email system by the alleged interceptor. In *Szymuszkiewicz*, an employee "monitor[ed] email messages sent to his supervisor," but neither the employee nor his supervisor owned the email system or provided the email service. 622 F.3d at 703. Thus, the determinative circumstance in Heimann's case were not present in *Szymyszkiewicz*. Similarly, *Epstein* involved an estranged wife who allegedly set up a forwarding rule on her allegedly unfaithful estranged husband's email account to intercept and forward to her inbox emails between him and other women. 843 F.3d at 1148. Again, neither the wife nor the husband owned the email system or provided the email service. *Id.* Thus, neither *Szymuszkiewicz* nor *Epstein* involved the determinative factual and legal issues presented by Heimann's "interception" claim in Count I. To put it another way, the absence of the owner and provider of the email system in *Szymuszkiewicz* and *Epstein* does not make the status of a defendant as the owner of the email system and the provider of the email service irrelevant to the issue of

liability. The discussion above demonstrates that these facts are relevant to the issue of liability in this case.

Finally, the Court rejects Heimann's assertion that E&S disclaimed party status because his allegations provide no plausible inference to reach that conclusion. Heimann points to a statement by E&S's managing partner that Heimann's former work email had been "shut down completely . . . so there should be no issue going forward, as no e-mail to [Heimann's] address will come in anymore." Filing 54 at 36 (citing Filing 30 at 3 (¶ 11)). Heimann also relies on the statement in the Clark affidavit that "no person from E&S has accessed or viewed any emails that may have been sent to" Heimann's former work email. Filing 54 at 36 (citing Filing 26-2 at 1 (¶ 6)). Heimann argues,

> An entity that swears it is not receiving and not viewing communications cannot simultaneously claim it is a party to those communications. The party-to-the-communication doctrine assumes that the asserted party actually receives, is aware of, and participates in the communication.

Filing 54 at 36. Heimann cites no authority supporting what the "party to the communication" doctrine "assumes." Thus, that allegation is a speculative "legal conclusion[ ] drawn from the facts," and the Court need not and does not accept it. *See Knowles*, 2 F.4th at 755.

Still more fundamentally, the factual content on which Heimann relies does not allow the Court to draw a reasonable inference that E&S disclaimed party status and is therefore liable for unlawful interception. *See Geivett*, 158 F.4th at 903. E&S employees stated only that "no email to [Heimann's] address will come in anymore" and that no person from E&S had "accessed or viewed any emails that may have been sent to" Heimann's former work email. There is no plausible or reasonable inference from those statements that E&S disclaimed that it was a party to emails sent to the email address by third parties, where party status depended on E&S's status as the owner of the email system and the provider of the email service. A party (even an intended one) may not

receive communications or may receive them but never access or view them—in other words, not receiving and not reviewing emails does not logically or necessarily negate status as a party to those emails.

Thus, Count I of Heimann's Amended Complaint fails to state a claim of "interception" of Heimann's emails in violation of the Wiretap Act, 18 U.S.C. § 2511(1)(a), and E&S is entitled to dismissal of that claim.

*3. The Wiretap Act Claims in Counts II and III*

a. The Claims

In Count II, Heimann alleges "Violation of the Federal Wiretap Act: Unlawful Disclosure *(18 U.S.C. § 2511(1)(c) – Against All Defendants)*." Filing 30 at 14. The gravamen of this claim is the following:

> 69. Upon information and belief, Defendants disclosed the contents of communications intercepted through the shadow mailbox redirect to one or more persons, including the John Doe defendants. Each disclosure of an intercepted communication to a person not previously a party to that communication constitutes a separate violation.

Filing 30 at 14–15 (¶ 69). In Count III, Heimann alleges "Violation of the Federal Wiretap Act: Unlawful Use *(18 U.S.C. § 2511(1)(d) - Against All Defendants)*." Filing 30 at 15. The gravamen of this claim is the following:

> 73. Upon information and belief, Defendants and/or the John Doe defendants used the contents of communications intercepted through the shadow mailbox redirect for purposes including but not limited to: monitoring Plaintiff's client relationships, monitoring active litigation matters, monitoring communications from Nebraska Supreme Court disciplinary authorities, and obtaining competitive intelligence regarding Plaintiff's practice. Each such use constitutes a separate violation.

Filing 30 at 15 (¶ 73).

Again, the elements of a Wiretap Act "disclosure" and "use" claims are a "prism that may shed light upon the plausibility of the claim," *Blomker*, 831 F.3d at 1056, and provide context to

the parties' arguments on the sufficiency of the pleading of these claims. "Disclosure" and "use" claims under §§ 2511(1)(c) and 2511(1)(d) require not just proof of an "interception" under § 2511(1)(a) but that the defendant "kn[ew] or ha[d] reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection." 18 U.S.C. §§ 2511(1)(c), 2511(1)(d).

b. The Parties' Arguments

E&S asserts that a "disclosure" or "use" violates the Wiretap Act only when the communications were "intercepted" in violation of the Wiretap Act. Filing 43 at 14, 15. E&S argues that because there has been no "interception" of the email communications at issue, the claims of "disclosure" or "use" of the emails in violation of the Wiretap Act must fail. Filing 43 at 14, 15. Alternatively, E&S argues that Heimann fails to plead facts plausibly establishing either a disclosure or a use. Filing 43 at 14, 15. E&S argues that Heimann cannot point to a single email that E&S actually disclosed after being intercepted and that he offers nothing but speculation to support his pleading of disclosure based on "information and belief." Filing 43 at 14. Likewise, E&S argues that Heimann offers nothing beyond "information and belief" that E&S used any information from any intercepted email. Filing 43 at 15.

Heimann counters that he is not required to identify specific instances of disclosure or use in his Amended Complaint because he has provided sufficient basis for allegations "on information and belief" where the relevant facts are uniquely within E&S's knowledge. Filing 54 at 38. He argues that the adequate basis is found in the records he argues show redelivery of emails to a shadow inbox, an admission by an E&S employee that E&S had the ability to monitor emails, and E&S's refusal to produce records that would document the disposition of captured communications. Filing 54 at 38–39. He contends that information that would demonstrate disclosure and use—such as mailbox audit logs, Barracuda Message Archiver audit logs, Exchange

Online Mailbox Permission records, and sender policies configuration history—are uniquely within E&S's control. Filing 54 at 39.

In reply, E&S argues that Heimann's contentions are not enough to justify discovery of any disclosure or use information. Filing 58 at 13–14.

c. Counts II and III Fail to Plead "Disclosure" or "Use" in Violation of the Wiretap Act

One fatal flaw in Heimann's "disclosure" and "use" claims under the Wiretap Act is his failure to plead an "interception." "It is settled that a person has not committed a disclosure or use violation under [the Wiretap Act] unless s/he 'knew or had reason to know that the interception [by which the information which was disclosed or used had been obtained] itself was in violation of [the Wiretap Act]." *Williams v. Poulos*, 11 F.3d 271, 284 (1st Cir. 1993) (first and third bracketed insertions add; second bracketed insertion in the original) (quoting *United States v. Wuliger*, 981 F.2d 1497, 1501 (10th Cir. 1992), and also citing *Thompson v. Dulaney*, 970 F.2d 744, 749 (10th Cir. 1992)).

As the First Circuit explained,

> Thus, in a civil action, a plaintiff must demonstrate "1) the information used or disclosed came from an intercepted communication, and 2) sufficient facts concerning the circumstances of the interception such that the defendant could, with presumed knowledge of the law, determine that the interception was prohibited in light of [the Wiretap Act]." *Thompson*, 970 F.2d at 749*; see also* *Cheek v. United States*, 498 U.S. 192, 199–200, 111 S.Ct. 604, 609–610, 112 L.Ed.2d 617 (1991) (making clear that the common law presumption that every person knows the law ordinarily applies when courts construe criminal statutes). This demonstration includes a showing that any statutory exceptions asserted by a defendant do not, in fact, apply. *See* *Thompson*, 970 F.2d at 749.

*Williams*, 11 F.3d at 284.

> [T]o establish use and disclosure liability under [the Wiretap Act], a defendant must be shown to have been aware of the factual circumstances that would violate the statute. For example, it is not enough to show that a defendant merely knew he was using or disclosing information from an intercepted communication. It must also

> be shown that the defendant knew, inter alia, that neither party to the intercepted conversation had consented to the interception.

*Thompson*, 970 F.2d at 749. For the reasons explained above in § III.C.2., Heimann has failed to allege any unlawful "interception," that is, an interception in violation of § 2511(1)(a), including the applicability of statutory exceptions in § 2511(2) that apply as a matter of law. *Williams*, 11 F.3d at 284. Also, because E&S owned the email system and provided the email service, there are no allegations suggesting that E&S knew it would be using or disclosing information from an intercepted communication or that it would not have permission to intercept the emails as a party to the communications. *Thompson*, 970 F.2d at 749.

Heimann's further problem is that he has pleaded no facts plausibly suggesting any "disclosure" or "use" of any captured emails. The Court rejects the assertion that Heimann's pleadings "on information and belief" are sufficient because the proof supporting these allegations are within the sole possession and control of E&S. *See Brisco*, 172 F.4th at 996 (explaining that such a circumstance could state a claim in such circumstances). Heimann points to allegations of facts that plausibly suggest E&S had access to captured emails, but the inferential leap from access to disclosure or use is simply too great to be reasonable. *See Geivett*, 158 F.4th at 903 (explaining that a court must make "all reasonable inferences" in favor of the pleader (citation omitted)); *Brisco*, 172 F.4th at 1010 (explaining that a pleading on information and belief must be based on sufficient factual material to make an inference of culpability plausible). As E&S points out, Heimann has not pleaded any capture of any specific email or the disclosure or the use of any information from any specific email. These claims rest on nothing more than conclusory speculation. *Brisco*, 172 F.4th at 1010 (explaining that without plausible factual allegations to support them, pleadings "on information and belief" can be rejected as merely conclusory); *Dalen*, 123 F.4th at 903-04 (explaining that on a Rule 12(b)(6) motion to dismiss courts "do not accept

threadbare recitals of a cause of action's elements, supported by mere conclusory statements" (internal quotation marks and citation omitted).

Thus, Counts II and III of Heimann's Amended Complaint fail to state claims of "disclosure" or "use" of his emails in violation of the Wiretap Act, 18 U.S.C. § 2511(1)(c) and 18 U.S.C. § 2511(1)(d), respectively, and E&S is entitled to dismissal of those claims.

**D. Heimann's Stored Communications Act Claim**

In Count IV, Heimann alleges "Violation of the Stored Communications Act *(18 U.S.C. § 2701 - Against All Defendants)*." Filing 30 at 15. The Court begins its analysis of whether this Count states a claim upon which relief can be granted with a summary of the applicable statutory provisions.

*1. Statutory Provisions*

The first provision of the Stored Communications Act (SCA) at issue here states the following:

> **(a) Offense**.--Except as provided in subsection (c) of this section whoever--
>
> > **(1)** intentionally accesses without authorization a facility through which an electronic communication service is provided; or
> >
> > **(2)** intentionally exceeds an authorization to access that facility;
>
> and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system shall be punished as provided in subsection (b) of this section.

18 U.S.C. § 2701(a). Subsection (c) referenced in that provision provides as follows:

> **(c) Exceptions**.--Subsection (a) of this section does not apply with respect to conduct authorized--
>
> > **(1)** by the person or entity providing a wire or electronic communications service;
> >
> > **(2)** by a user of that service with respect to a communication of or intended for that user; or

> **(3)** in section 2703, 2704 or 2518 of this title.

18 U.S.C. § 2701(c). Civil actions for violations of the SCA are authorized by 18 U.S.C. § 2707.

*2. The Claim*

Heimman's SCA claim is based primarily on the following allegations:

> 77. The shadow mailbox to which pheim@eslaw.com communications were redirected constitutes a facility through which an electronic communication service is provided. Communications stored in the shadow mailbox are electronic communications in electronic storage. Plaintiff and his clients have never authorized Defendants to access those stored communications. E&S's ownership of the eslaw.com domain does not confer authorization to access the contents of privileged attorney-client communications that E&S had no right to acquire. Although 18 U.S.C. § 2701(c)(1) provides a limited exception for a provider's authorized access, that exception extends only to activities necessary for the operation of the service, not to the covert interception and retention of a departed partner's privileged client communications for thirteen months while misrepresenting the account's status.
>
> 78. Defendants intentionally accessed and exceeded any authorization they may have had by actively configuring a shadow mailbox redirect mechanism, intercepting communications, and refusing to disclose the configuration or the identities of those who accessed the communications.

Filing 30 at 16 (¶¶ 77–78).

Again, the elements of a SCA claim pursuant to § 2701(a) are a "prism that may shed light upon the plausibility of the claim," *Blomker*, 831 F.3d at 1056, and provide context to the parties' arguments on the sufficiency of the pleading of such a claim. E&S relies on the statement of the elements of this claim in *Cornerstone Consultants, Inc. v. Production Input Solutions, L.L.C.*, 789 F. Supp. 2d 1029, 1047 (N.D. Iowa 2011), and Heimann does not dispute that statement. In *Cornerstone*, the court "found no single clear statement of the elements of such a claim," but it concluded that the claim had the following elements by "parsing the statute and applicable case law":

> *One*, the defendant intentionally accessed a facility through which an electronic communications service is provided;

> *Two*, such access was not authorized or intentionally exceeded any authorization by the person or entity providing the electronic communications service, the user of that service with respect to a communication of or intended for that user, or a federal statute;
>
> *Three*, the defendant thereby obtained, altered, or prevented authorized access to an electronic communication while it was in electronic storage in such system; and
>
> *Four*, the defendant's unauthorized access or access in excess of authorization caused actual harm to the plaintiff.

*Cornerstone*, 789 F. Supp. 2d at 1047. The court "recognize[d] that some of the alternatives for these elements may not be at issue in this case"—and they may not be at issue in Heimann's case, either—but the court's "goal at this time was to establish a correct and comprehensive statement of the elements of a § 2701(a) claim." *Id.*

*3. The Parties' Arguments*

E&S argues that Heimann has failed to plead sufficient facts for any of the elements of his SCA claim. Filing 43 at 16. As to the first element, E&S argues that Heimann's allegations that E&S accessed his emails are pure speculation. Filing 43 at 16. Next, E&S argues that the email account at issue belonged to E&S so that any access was authorized. Filing 43 at 17. E&S asserts that Heimann's bald pleading that neither he nor any of his clients authorized anyone to review his emails is insufficient because § 2701(c) independently authorizes access by the service provider, which is E&S. Filing 43 at 17. E&S also argues that configuring email routing for an address on a domain that E&S owns and administers is "by definition" an activity incident to the operation of E&S's email service. Filing 43 at 18. E&S contends that Heimann's allegations that E&S obtained any emails are pure speculation based on information and belief, because those allegations establish only that E&S could read his emails but not that E&S did so. Filing 43 at 18–19. E&S also asserts that Heimann has not adequately pleaded that any allegedly misdirected emails were in "electronic storage" as that term is used in the SCA. Filing 43 at 19. E&S also argues that

Heimann has made no factual allegation of harm because at most he has speculative allegations of harm that might arise. Filing 43 at 19.

Heimann asserts that he has adequately alleged a SCA violation to the extent that communications addressed to pheim@eslaw.com were redirected to a shadow mailbox and stored there. Filing 54 at 40. He next contends that the service-provider exception in § 2701(c)(1) does not confer unlimited authority because the Eighth Circuit has never held that this exception authorizes a law firm to access privileged client communications addressed to a former partner who has an independent professional relationship with clients. Filing 54 at 40. He contends that the cases on which E&S relies all involved current employer-employee relationships not a lawyer and his former law firm. Filing 54 at 41. Heimann also argues that he has alleged that this exception only extends to activities necessary for the operation of the service, not to the covert interception and retention of a departed partner's privileged client communications, thus adequately pleading lack of authority. Filing 54 at 41. Heimann contends further that he has adequately alleged "electronic storage" by alleging that communications redirected to a shadow mailbox before delivery are in temporary, intermediate storage incidental to transmission. Filing 54 at 42 (citing Filing 30 at 16 (¶ 77)). Finally, Heimann argues that he has adequately alleged actual harm. Filing 54 at 42.

In reply, E&S argues that Heimann does not explain how E&S lacked authority to access its email system. Filing 58 at 14. E&S argues that Heimann's admission that E&S owns and administers the eslaw.com domain is dispositive of his SCA claim because that ownership establishes authorization as a matter of law. Filing 58 at 14–15.

*4. Count IV Fails to Plead a Stored Communications Act Claim*

The arguments of both parties are somewhat misdirected, as they focus on alleged access to Heimann's emails without authorization. The statutory provision prohibits "intentionally

access[ing] without authorization a facility through which an electronic communication service is provided" or exceeds that authorization "to access that facility." 18 U.S.C. § 2701(a). Likewise, in *Cornerstone*, the court formulated the first element of a SCA claim as "the defendant intentionally accessed a facility through which an electronic communications service is provided." 789 F. Supp. 2d at 1047. Thus, the question is whether E&S accessed "a facility through which an electronic communications service is provided" and is not whether E&S accessed Heimann's emails.

The Third Circuit explained,

> While the SCA does not define "facility," it does define "electronic communication service" as "any service which provides to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. § 2510(15) (incorporated by reference in 18 U.S.C. § 2711(1)). This Court has concluded that "facilities" under the SCA are network service providers, which include "telephone companies, internet or e-mail service providers, and bulletin board services." *In re Google Inc.*, 806 F.3d at 146 (quoting *Garcia v. City of Laredo*, 702 F.3d 788, 792 (5th Cir. 2012)).

*Walker v. Coffey*, 956 F.3d 163, 168 (3d Cir. 2020); *see also Vista Mktg., LLC v. Burkett*, 812 F.3d 954, 962–63 (11th Cir. 2016) ("'Electronic communication service' [within the meaning of § 2701(a)] is defined as 'any service which provides to users thereof the ability to send or receive wire or electronic communications.'" (quoting 18 U.S.C. § 2510(15))). The Third Circuit then concluded "that Penn State qualifies as a facility that provides electronic communication services to its employees under the terms of the SCA." *Id.* Similarly, the Sixth Circuit has explained that email platforms are "'facilit[ies]' for providing 'electronic communication service[s]' within the meaning of the Stored Communications Act." *Abu v. Dickson*, 107 F.4th 508, 521 (6th Cir. 2024) (quoting § 2701(a)). Thus, the "facility" that E&S must allegedly have accessed intentionally and without authorization is the eslaw.com domain email service as the "email platform," *Abu*, 107 F.4th at 521, or E&S itself as the facility providing email services to its employees, *Walker*, 956 F.3d at 168.

Heimann has admitted that E&S owned and operated the email domain, the email security gateway, and servers for the eslaw.com email domain. Thus, as a matter of law, E&S had authority to access its own "facility" because E&S fell squarely within the § 2701(c)(1) exception to a § 2701(a) claim for "conduct authorized . . . by the person or entity providing a wire or electronic communications service." 18 U.S.C. § 2701(c)(1). Heimann's argument that the Eighth Circuit has never held that this exception authorizes a law firm to access privileged client communications addressed to a former partner who has an independent relationship with clients is the wrong way around. Filing 54 at 40. E&S falls within the plain language of the statutory exception. What the Eighth Circuit has never authorized is an exception to the exception for law firms that are accessing their own "facility through which an electronic communication service is provided." 18 U.S.C. § 2701(a), (c). There is simply no authority providing law firms and their employees with special status under the SCA. Heimann has not and cannot plead any facts creating a plausible or reasonable inference that E&S's access to the "facility" it owns was unauthorized. *See Geivett*, 158 F.4th at 903 (explaining that a court must make "all reasonable inferences" in favor of the pleader (citation omitted)).

Also unavailing is Heimann's further argument that the § 2701(c) exception only extends to activities necessary for the operation of the service and not to the covert interception by a law firm of a former partner's emails. Filing 54 at 41. No such limitation is apparent from the plain language of the § 2701(c) exception, which states without limitation that "Subsection (a) of this section does not apply with respect to conduct authorized . . . by the person or entity providing a wire or electronic communications service." 18 U.S.C. § 2701(c). Heimann does not cite any authority that would support such a limitation.

The parties also dispute whether Heimann has adequately pleaded "electronic storage" of the emails allegedly obtained or any prevention of Heimann's access to them. 18 U.S.C.

§ 2701(a).[6] The Court need not reach these questions, however, because Heimann has failed to allege unauthorized access to the facility through which the email service was provided.

Count IV of the Amended Complaint fails to state a claim of violation of the SCA upon which relief can be granted. *See Geivett*, 158 F.4th at 903 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (quoting *Iqbal*, 556 U.S. at 678)). E&S is entitled to dismissal of Count IV.

### E. Heimann's Computer Fraud and Abuse Act Claim

In Count V, Heimann alleges "Violation of the Computer Fraud and Abuse Act *(18 U.S.C. § 1030(a)(2) - Against All Defendants)*." Filing 30 at 16. Once again, the Court begins its analysis of whether this Count states a claim upon which relief can be granted with a summary of the applicable statutory provisions and the statement of the claim.

*1. Statutory Provisions*

The provision of the Computer Fraud and Abuse Act (CFAA) on which Count IV is based states, "Whoever . . . intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains . . . information from any protected computer, . . . shall be punished as provided in subsection (c) of this section." 18 U.S.C. § 1030(a)(2)(C). Section 1030(g) authorizes a civil action by "[a]ny person who suffers damages or loss by reason of a violation of

[6] Under the SCA,

> (17) "electronic storage" means--
>
> > (A) any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and
> >
> > (B) any storage of such communication by an electronic communication service for purposes of backup protection of such communication[.]

18 U.S.C. § 2510(17); *see also Clare v. Clare*, 982 F.3d 1199, 1202 (9th Cir. 2020) (explaining that "electronic storage" for purposes of § 2701(a) is defined in § 2510(17), as incorporated by § 2711(1)).

this section . . . against the violator to obtain compensatory damages and injunctive relief or other equitable relief." 18 U.S.C. § 1030(g) (also stating certain other limitations on a civil action for certain violations); *see also* 18 U.S.C. § 1030(c)(4)(A)(i)(I) (setting out loss requirements).

The CFAA provides,

> (e) As used in this section—
>
> * * *
>
> (2) the term "protected computer" means a computer—
>
> * * *
>
> (B) which is used in or affecting interstate or foreign commerce or communication, including a computer located outside the United States that is used in a manner that affects interstate or foreign commerce or communication of the United States . . .
>
> (C) that—
>
> * * *
>
> (II) has moved in or otherwise affects interstate or foreign commerce[.]

18 U.S.C. § 1030(e)(2)(B), (C)(II).

*2. The Claim*

Heimann's CFAA claim is based primarily on the following allegation:

> 82. The shadow mailbox server constitutes a "protected computer" within the meaning of 18 U.S.C. § 1030(e)(2)(B). The John Doe defendants, by accessing the shadow mailbox containing Plaintiff's intercepted client communications, accessed a protected computer without authorization or in excess of any authorization. E&S, by directing and facilitating such access, is liable as a principal.

Filing 30 at 16–17 (¶ 82).

Again, the elements of a CFAA claim pursuant to § 1030(a)(2) are a "prism that may shed light upon the plausibility of the claim," *Blomker*, 831 F.3d at 1056, and provide context to the

parties' arguments on the sufficiency of the pleading of such a claim. The Ninth Circuit recently explained,

> To bring a successful § 1030(a)(2) claim pursuant to the CFAA private right of action, Amazon must show that Perplexity "(1) intentionally accessed a computer, (2) without authorization or exceeding authorized access, and that [Perplexity] (3) thereby obtained information (4) from any protected computer (if the conduct involved an interstate or foreign communication), and that (5) there was loss to one or more persons during any one-year period aggregating at least $5,000 in value." *See LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1132 (9th Cir. 2009).

*Amazon.com Servs., LLC v. Perplexity AI, Inc.*, No. 26-1444, 2026 WL 2237587, at *3 (9th Cir. Aug. 4, 2026); *see also United States v. Eddings*, 161 F.4th 199, 204 (3d Cir. 2025) ("To prove Eddings violated the CFAA with Denis, the Government had to prove [Denis] '(1) intentionally (2) accessed without authorization . . . a (3) protected computer and (4) thereby obtained information.'" (quoting *United States v. Auernheimer*, 748 F.3d 525, 533 (3d Cir. 2014)).

*3. The Parties' Arguments*

E&S argues that the CFAA was enacted to address computer hacking, but Heimann's allegations are not about computer hacking. Filing 43 at 19. E&S argues that this claim fails for many of the same reasons that Heimann's other federal statutory claims fail. Filing 43 at 19. E&S asserts, "[Heimann's] most glaring pleading deficiency is the authorization element. No claim exists because E&S did not hack itself." Filing 43 at 20. E&S argues that, where the "protected computer" at issue is the purported "shadow mailbox server," E&S is authorized to access its own server, which is dispositive of Heimann's CFAA claim. Filing 43 at 21. E&S argues further that Heimann has failed to allege damage or loss apart from conclusory and speculative allegations found in his Amended Complaint, Filing 30 at 17 (¶ 83). Filing 43 at 21.

Heimann responds that E&S's attacks on his pleading of "authorization" and "loss" both fail. Filing 54 at 43. He contends that the Supreme Court preserved CFAA liability where a defendant accesses particular files, folders, or databases that are "off-limits." Filing 54 at 43 (citing

*Van Buren v. United States*, 593 U.S. 374, 396 (2021)). He contends that the emails in question were redirected to the shadow mailbox which was a "particular area" of E&S's infrastructure that was "off-limits" as a matter of professional conduct law and as a matter of E&S's own representations. Filing 54 at 43–44. He also argues that he has alleged loss within the meaning of the CFAA by alleging that he "incurred substantial costs in digital-forensics consultation to analyze the redirect mechanism, in investigating the scope of interception to discharge independent professional obligations to former clients, and in responding to disciplinary matters that proceeded while Counsel for Discipline communications were diverted." Filing 54 at 44.

In reply, E&S points out that Heimann has not identified any CFAA case involving an employee's claim that his former employer exceeded its authority to access its own computer. Filing 58 at 6.

*4. Count V Fails to Plead a Computer Fraud and Abuse Act Claim*

The Court need not tarry over the question of whether the shadow mailbox server at issue in Count V was a "protected computer" within the meaning of the CFAA. As the Third Circuit explained,

> Virtually every computer is a "protected computer" because the phrase covers any computer "used in or affecting interstate or foreign commerce or communication," *NRA [Grp., LLC v. Durenleau]*, 154 F.4th [153,] 165 [(3d Cir. 2025)] (quoting 18 U.S.C. § 1030(e)(2)(B)), which encompasses at least "all computers that connect to the Internet," *Van Buren v. United States*, 593 U.S. 374, 379, 141 S.Ct. 1648, 210 L.Ed.2d 26 (2021).

*Eddings*, 161 F.4th at 204. Rather, the dispositive issue here is whether Heimann has plausibly alleged that E&S accessed that protected computer "without authorization or exceeding authorized access." *Amazon.com Servs., LLC*, 2026 WL 2237587, at *3 (second element); *Eddings*, 161 F.4th at 204 (same).

a. Standards for Prohibited Access under § 1030(a)(2)

According to the United States Supreme Court, "[i]n the computing context, 'access' references the act of entering a computer 'system itself' or a particular 'part of a computer system,' such as files, folders, or databases." *Van Buren*, 593 U.S. at 388. The "without authorization" and "exceeds authorized access" clauses of subsection (a)(2) "specify two distinct ways of obtaining information unlawfully." *Van Buren*, 593 U.S. at 389.

As the Third Circuit subsequently explained,

> The "without authorization" phrase "protects computers themselves by targeting so-called outside hackers—those who 'acces[s] a computer without any permission at all.'" *Van Buren*, 593 U.S. at 389, 141 S.Ct. 1648 (quoting *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1133 (9th Cir. 2009)).

*Eddings*, 161 F.4th at 205. Although there is no statutory definition of "authorization," the Third Circuit has provided one:

> In *NRA* we held "an employee is authorized to access a computer when his employer approves or sanctions his admission to that computer." *NRA*, 154 F.4th at 168 (quoting *Teva Pharms. USA, Inc. v. Sandhu*, 291 F. Supp. 3d 659, 670 (E.D. Pa. 2018)). That is because authorization is "permission or power granted by an authority." *United States v. Nosal*, 844 F.3d 1024, 1035 (9th Cir. 2016) (quoting *Brekka*, 581 F.3d at 1133). *See also Abu v. Dickson*, 107 F.4th 508, 516 (6th Cir. 2024). In the employment context, the authority is the employer. *See Brekka*, 581 F.3d at 1135; Abu, 107 F.4th at 516 (describing authorization as a function of "a company's sanction or permission"). One way an employee accesses a computer "without authorization," then, is by accessing the computer without her employer granting permission. . . .
>
> [A] a second way an employee accesses a computer "without authorization" is "when the employer has rescinded permission to access the computer and the defendant uses the computer anyway." *Brekka*, 581 F.3d at 1135.

*Eddings*, 161 F.4th at 205.

The CFAA defines "exceeds authorized access" to mean "to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser [sic] is not entitled so to obtain or alter." 18 U.S.C. § 1030(e)(6); *NRA*, 154 F.4th at 166 (quoting 18 U.S.C. § 1030(e)(6)). Thus, "[a]n individual 'exceeds authorized access' when he accesses a

computer with authorization but then obtains information located in particular areas of the computer—such as files, folders, or databases—that are off limits to him." *Van Buren*, 593 U.S. at 396. Whether access "exceeds authorized access" does not turn on whether the information was obtained for an "improper purpose" but on whether the actor had authorization to use the particular database or area of the computer. *Id.*; *see also NRA*, 154 F.4th at 166 (citing *Van Buren*, 593 U.S. at 396). The Supreme Court described this as "a gates-up-or-down inquiry—one either can or cannot access a computer system, and one either can or cannot access certain areas within the system," as some areas are fully "off limits." *Id.* at 390, 396.

To distinguish between access that is "without authorization" and access that "exceeds authorized access," the Sixth Circuit offered the following:

> Imagine, to picture the distinction, that you open your office door and, to your surprise, find someone already inside. If the person is a stranger with no right to be in the building, they lack authorization. If the person is a coworker from down the hall, they may have exceeded their authorized access.

*Abu v. Dickson*, 107 F.4th 508, 514 (6th Cir. 2024).

b. E&S's Access to the Email Server Was Not "Without Authority"

Heimann alleges "access" to the "shadow mailbox server" at issue in the form of entering the eslaw.com domain servers generally and the "shadow mailbox server" specifically as a part of the eslaw.com computer system. Filing 30 at 16 (¶ 82). However, he has not identified or plausibly pleaded any factual basis to identify any of the "John Doe defendants" he alleges made such "access." Filing 30 at 16 (¶ 82). An even bigger problem with this claim is that he alleges "E&S, by directing and facilitating such access, is liable as a principal." Filing 30 at 17 (¶ 82). However, E&S was the employer of anyone at E&S who might have accessed the protected "shadow mailbox server" at issue, so E&S was the entity that could approved access to that computer or rescind permission to access it. *See Eddings*, 161 F.4th at 205 (explaining that "an employee is authorized

to access a computer when his employer approves or sanctions his admission," quoting *NRA*, 154 F.4th at 168, and that "an employee accesses a computer 'without authorization' . . . 'when the employer has rescinded permission to access the computer and the defendant uses the computer anyway,'" quoting *Brekka*, 581 F.3d at 1135). As the entity with the power to grant authorization, E&S could not access the shadow mailbox server "without authorization." *Id.* Thus, Heimann has not alleged any "outside hacker" who gained access to a computer without any permission at all. *Id.* (citing *Van Buren*, 593 U.S. at 389).

Besides being the employer, E&S was the owner of the email domain, servers, and system and the provider of the email system. In *Croy v. Google LLC*, the district court considered whether an owner and operator of its own servers, including an email server, could access a protected computer "without authorization" in violation of either 18 U.S.C. § 1030(a)(2), at issue here, or 18 U.S.C. § 1030(a)(5)(C). *Croy v. Goole LLC*, No. CV 23-12106, 2024 WL 4251907, at *4 (E.D. Mich. Aug. 21, 2024), *report and recommendation adopted*, No. 23-12106, 2024 WL 4349185 (E.D. Mich. Sept. 30, 2024), *appeal dismissed*, No. 24-1942, 2025 WL 3079215 (6th Cir. June 5, 2025). The court explained,

> As to a claim under § 1030(a)(5)(C), . . . because Google is the owner and operator of its own servers, including its Gmail server, Croy cannot show that Google's alleged improper access of that server was "without authorization." *See Pulte Homes, Inc.*, 648 F.3d at 304 (stating that "a person who uses a computer 'without authorization' *has no rights, limited or otherwise*, to access the computer in question," and so the court must ask whether defendant had "*any* right" to access) (emphasis in original and citations omitted). Thus, Croy fails to allege a violation of § 1030(a)(5)(c).
>
> As to a claim under § 1030(a)(2), Croy again fails to allege that Google accessed its own Gmail servers "without authorization" for the reasons discussed above. *See Pulte Homes, Inc.*, 648 F.3d at 304.

*Croy*, 2024 WL 4251907, at *4. Likewise, Heiman has failed to allege a claim under § 1030(a)(2) because he cannot allege that E&S's allegedly improper access to its own servers was "without

authorization." *Id.* As the owner of the servers and the email system, E&S undisputably was not a person who used the protected shadow mailbox server with no rights. *Id.* (citing *Pulte Homes, Inc.*, 648 F.3d at 304).

Heimann has failed to allege facts plausibly suggesting that E&S's access to the shadow mailbox server was "without authorization." *See Geivett*, 158 F.4th at 903 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (quoting *Iqbal*, 556 U.S. at 678)). Consequently, his CFAA claim under that distinct way of obtaining information in violation of § 1030(a)(2)(C) fails to state a claim. *Van Buren*, 593 U.S. at 389 (explaining that "without authorization" and "exceeding authorized access" are distinct ways of obtaining information unlawfully under § 1030(a)(2)).

c. E&S's Access to the Email Server Did Not "Exceed[ ] Authorized Access"

The "exceeding authorized access" alternative to Heimann's CFAA claim fares no better. *Id.* (defining "exceeding authorized access" as a distinct way to violate § 103(a)(2)). Even though an individual with authorization may run afoul of this alternative if he or use uses such access to obtain or alter information in the computer that the individual is not entitled to obtain or alter, *see* 18 U.S.C. § 1030(e)(6); *NRA*, 154 F.4th at 166, Heimann cannot plausibly claim that E&S was not entitled to obtain information on the shadow mailbox server. Heimann alleges that E&S obtained information located in particular areas of the computer that were "off limits" to E&S, *see Van Buren*, 593 U.S. at 396, but this allegation is not plausible.

Heimann first argues that the shadow mailbox to which his communications were redirected was off limits "as a matter of professional conduct law." Filing 54 at 43. He contends that E&S's server ownership is not controlling because such communications were off limits as a

matter of Nebraska Rule of Professional Conduct § 3-501.6 and ABA Formal Opinion 489. Filing 54 at 43. However, this argument does not plausibly relate to whether access to the communications on the shadow mailbox server were "off limits," so that access to them exceeded authorization, but an argument that E&S's access to those communications was "improper." As explained above, whether access "exceeds authorized access" does not turn on whether the information was obtained for an "improper purpose" but on whether the actor had authorization to use the particular database or area of the computer. *Van Buren*, 593 U.S. at 396; *NRA*, 154 F.4th at 166. Here, the "gates" were "up" for E&S to access the servers because E&S owned them, the eslaw.com domain, and the email system, and there was no limitation under the law applicable to a CFAA claim on E&S's access to certain areas of that system. *Id.* at 390, 396.

Equally unavailing is Heimann's assertion that the shadow mailbox server was "off limits" "as a matter of [E&S's] own representation." Filing 54 at 43. Heimann argues that "Collins's February 4, 2025, representation that [Heimann's] email account had been 'shut down completely' explicitly closed any remaining authorization gate." Filing 54 at 43. This allegation is at best a legal conclusion drawn from the facts that the Court would not have to accept as true even if that allegation could be found in the Amended Complaint. *See Knowles*, 2 F.4th at 755 (explaining that a court also need not accept a pleader's "legal conclusions drawn from the facts"). Heimann cites no authority supporting the notion that the owner of the servers has no authority to access them after an email account has been shutdown.

Again, the decision of the court in *Croy* is illuminating. The court considered whether the plaintiff had adequately alleged that Google "exceeded authorized access" under § 1030(a)(2)(C) and § 1030(e)(6):

> "Under this definition [in § 1030(e)(6)], 'an individual who is authorized to use a computer for certain purposes *but goes beyond those limitations* ... has 'exceed[ed] authorized access.''" *Pulte Homes*, 648 F.3d at 304 (emphasis in original) (quoting

> *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1133 (9th Cir. 2009)). Courts have found that an entity has the authority to access emails that are stored on its own servers. *See, e.g., Abu*, 2021 WL 1087442, at *7 ("Defendants may have had the authority to access the emails if they were stored on Defendants' server"); *Sargeant v. Maroil Trading, Inc.*, 2018 WL 3031841, at *7 (S.D. Fla. May 30, 2018) ("The common understanding of an entity 'maintaining' a server would include that entity having the technological ability (i.e. the password) and the legal right to access the server."); *Freedom Calls Found. v. Bukstel*, 2006 WL 845509, at *27 (E.D.N.Y. Mar. 3, 2006) ("To the extent that prior e-mails sent to Defendant's [work] email account are stored on Plaintiff's computer system, Plaintiff has the right to search those stored emails."). Finally, Croy's assertion that Google accessed his emails "for illegal and unlawful purposes" does not change the analysis under the CFAA, as § 1030(a)(2) "covers those who obtain information from particular areas in the computer ... to which their computer access does not extend. It does not cover those who ... have improper motives for obtaining information that is otherwise available to them." *Van Buren v. United States*, 593 U.S. 374, 378 (2021); *see also Ajuba Int'l, L.L.C. v. Saharia*, 871 F. Supp. 2d 671, 687 (E.D. Mich. 2012) (finding that "the text of the CFAA calls for only an objective analysis of whether an individual had sufficient 'authorization'" to access a computer, but does not "require an analysis of an individual's subjective intent in accessing a computer system.").
>
> In sum, because Google is merely alleged to have accessed emails stored in its own Gmail server, Croy fails to allege a valid claim under the CFAA, and such claims should be dismissed.

*Croy*, 2024 WL 4251907, at *4. Here, Heimann has pointed to nothing—legal or factual—that plausibly suggests that E&S did not have the authority to access emails that were stored on its own servers, either before or after his email account was shutdown. *Id.* (citing cases holding that the server owner has authority to access emails stored on its own servers).

Count V of the Amended Complaint fails to state a CFAA claim upon which relief can be granted because the allegations of access "without authorization" or "exceeding authorized access" do not plausibly support such a claim. *See Geivett*, 158 F.4th at 903 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (quoting *Iqbal*, 556 U.S. at 678)). E&S is entitled to dismissal of Count V on these grounds. Therefore, it is unnecessary for the Court to

reach the parties' arguments on whether Heimann has plausibly pleaded "loss" within the meaning of the CFAA.

### F. Heimann's Declaratory Judgment Claim Based on Federal Claims

Heimann's last federal claim is in Count IX, in which Heimann seeks "Declaratory Judgment *(28 U.S.C. § 2201 - Against Defendant E&S)*." Filing 30 at 19. This Count states,

> 101. Plaintiff seeks a declaration from this Court that: (a) E&S has no legal right to access, read, retain, use, or disclose any electronic communication sent to pheim@eslaw.com after December 30, 2024, without Plaintiff's authorization and the authorization of the client who sent the communication; (b) E&S's domain ownership does not confer any right to the contents of attorney-client communications transmitted through that domain; (c) communications from Plaintiff's clients sent to pheim@eslaw.com after December 30, 2024 are privileged attorney-client communications belonging to those clients and to Plaintiff; and (d) any use or disclosure of such communications by E&S is prohibited by 18 U.S.C. §§ 2511 and 2515.

Filing 30 at 19 (¶ 101). The failure of Heimann's substantive federal claims in Count I through V means that there is no legal or factual basis for any of the declarations Heimann seeks. Thus, this claim is also dismissed for failure to state a claim upon which relief can be granted.

### G. The State Law Claims

In the remaining three Counts of the Amended Complaint, Heimann asserts state-law claims. In Count VI, he asserts "Fraudulent Misrepresentation *(Nebraska Common Law - Against Defendant E&S)*." Filing 30 at 17. In Count VII, he asserts "Tortious Interference with Business Relations *(Nebraska Common Law - Against All Defendants)*." Filing 30 at 17. In Count VIII, asserts "Spoliation of Evidence *(Against Defendant E&S)*." Filing 30 at 18. Although Heimann concedes that Count VII cannot proceed where it is currently pleaded as an independent tort, Filing 54 at 5, the Court will not reach any of the state-law claims.

Section 1367(a) of Title 28 provides that, with certain exceptions, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental

jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). However, when "the district court has dismissed all claims over which it has original jurisdiction," the court "may decline to exercise supplemental jurisdiction over a claim under subsection (a)." 28 U.S.C. § 1367(c)(3). Usually, the dismissal of the federal claims "will point toward declining to exercise jurisdiction over the remaining state-law claims." *Wilson v. Miller*, 821 F.3d 963, 971 (8th Cir. 2016) (quotation omitted). Because the Court concludes Heimann's federal law claims should all be dismissed for failure to state a plausible claim for relief, the Court declines to exercise supplemental jurisdiction over the remaining state law claims in Heimann's Amended Complaint.

Therefore, Counts VI, VII, and VIII are also dismissed.

## IV. THE MOTION TO REVIVE

The last motion now before the Court is Heimann's Motion to Revive Motion for Preliminary Injunction (Motion to Revive) in light of his Amended Complaint and additional evidence developed since the filing of his original Complaint. Filing 31. Because the Court is dismissing all claims in the Amended Complaint either for failure to state a claim upon which relief can be granted or because the Court declines to exercise supplemental jurisdiction over them pursuant to 28 U.S.C. § 1367, both the Motion to Revive and any request for injunctive relief are moot. Therefore, Heimann's Motion to Revive is denied.

## V. CONCLUSION

Upon the foregoing,

IT IS ORDERED that

1. Heimann's Motion Under Federal Rule of Civil Procedure 12(d) to Exclude Extra-Pleading Material from Defendants' Motion to Dismiss, or in the Alternative, to Convert the

Motion to One for Summary Judgment and Authorize Discovery Under Federal Rule of Civil Procedure 56(d) (Motion to Exclude or Convert), Filing 62, is denied in its entirety;

2. E&S's Motion to Dismiss Plaintiff's First Amended Complaint (Motion to Dismiss), Filing 42, is

a. granted as to the federal claims in Counts I through V and IX of the Amended Complaint; and

b. denied as to the state law claims in Counts VI, VII, and VIII; but

c. the Court declines to exercise subject-matter jurisdiction over the state-law claims in Count VI, VII, and VIII and those claims are instead dismissed pursuant to 28 U.S.C. § 1367(c)(3);

3. Heimann's Motion to Revive Motion for Preliminary Injunction (Motion to Revive), Filing 31, is denied.

Dated this 7th day of August, 2026.

BY THE COURT:

Brian C. Buescher
Chief United States District Judge